UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPARTA INSURANCE COMPANY          :
(as successor in interest to SPARTA Insurance
Holdings, Inc.),                              :

               Plaintiff,          :          Civil Action
                                  No. 26-10154

    v.                                        :

PENNSYLVANIA GENERAL INSURANCE  :
COMPANY (now known as Pennsylvania
Insurance Company),                        :

              Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff SPARTA Insurance Company (as successor-in-interest to SPARTA

Insurance Holdings, Inc.) ("SPARTA"), by and through its undersigned counsel, brings this

action against Pennsylvania General Insurance Company (now known as Pennsylvania Insurance

Company) ("PGIC") and alleges upon knowledge with respect to itself and its own acts, and

upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      SPARTA brings this breach of contract action as a result of PGIC's

ongoing refusal to satisfy its contractual obligations to SPARTA under a stock purchase

agreement and related transfer and assumption agreement, which require PGIC—not SPARTA—

to handle and pay claims relating to insurance policies issued by American Employers' Insurance

Company ("AEIC") prior to SPARTA's acquisition of AEIC from PGIC.

2.      This Court is already familiar with PGIC's efforts to avoid its contractual

obligations to SPARTA.  On September 30, 2025, after more than four years of litigation and

extensive discovery, Judge Saylor entered a summary judgment ruling in favor of SPARTA holding that two agreements remain valid and enforceable against PGIC and rejecting PGIC's myriad of defenses.  Despite this ruling, PGIC continues to refuse to comply with its obligations to SPARTA, resulting in further breaches of those agreements and further injury to SPARTA.

3.      PGIC now owes SPARTA more than $120 million and counting.  In a prior pending action, SPARTA is seeking more than $75 million in monetary damages, plus more than $15 million in pre- and post-judgment interest, plus attorneys' fees, expenses, and costs, in connection with payments made in respect of certain AEIC claims for the time period prior to December 1, 2024.

4.      Through this lawsuit, SPARTA seeks additional damages in connection with payments made in respect of certain AEIC claims made against historical AEIC policies issued to the Archdiocese of New Orleans ("ADNO") (the "ADNO Claims").  Specifically, SPARTA seeks an award of monetary damages for the harm SPARTA has suffered as a result of PGIC's refusal to indemnify SPARTA for the ADNO Claims, including, but not limited to, (a) $21,000,000.00 incurred by SPARTA to settle the ADNO Claims, (b) at least $2,132,656.68 in attorneys' fees, expenses and costs, and (c) pre- and post-judgment interest.

5.      This is the third lawsuit that SPARTA has been forced to bring against PGIC to enforce the parties' agreements.  Based on PGIC's conduct to date, the damages meter will continue to run for subsequent time periods and the injury to SPARTA will only grow as SPARTA continues to receive AEIC claims that are the responsibility of PGIC.

## THE PARTIES

6.    Plaintiff SPARTA Insurance Company is a Connecticut corporation that has its headquarters and its principal place of business at 242 Trumbull Street, Suite 204, Hartford, Connecticut 06103.

7.    In 2015, SPARTA's predecessor, SPARTA Insurance Holdings, Inc. ("SIH"), and SPARTA Insurance Company merged, with SPARTA Insurance Company as the surviving entity.

8.    Defendant Pennsylvania General Insurance Company is a New Mexico corporation that has its headquarters and its principal place of business at 10805 Old Mill Road, Omaha, Nebraska 68154.  Steven M. Menzies is President, Treasurer, Chief Executive Officer and a Director of PGIC.  Jeffrey A. Silver is Secretary and a Director of PGIC.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

10.    This Court has personal jurisdiction over PGIC pursuant to M.G.L. c. 223A, § 3, because, among other things, PGIC transacted business in Massachusetts and contracted to insure a person, property or risk located within Massachusetts at the time of contracting.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial part of the events giving rise to the claims occurred in Massachusetts.  In addition, in the Stock Purchase Agreement (the "2007 SPA"), PGIC agreed that the 2007 SPA would be governed by Massachusetts law and that certain suits related to the 2007 SPA could be brought in the courts of Massachusetts.

3

**THE 2005 T&A AGREEMENT, 2007 SPA, AND UNDERLYING TRANSACTION**

12.    On March 12, 2007, SIH and PGIC entered into the 2007 SPA pursuant to which SIH acquired AEIC, a Massachusetts insurance company, from PGIC.  The 2007 SPA is attached as Exhibit 1.  PGIC is a signatory to the 2007 SPA.  PGIC is a party to the 2007 SPA. The 2007 SPA defines PGIC as the "Seller."

13.    In the 2007 SPA, PGIC agreed to indemnify and hold SIH harmless for, among other things, any losses related to all of the liabilities for insurance policies issued by AEIC and all of the business of AEIC prior to the acquisition.

14.    The 2007 transaction was structured such that after the transaction closed, SIH would obtain AEIC as a "clean shell" meaning that there would be no liabilities remaining in AEIC after the transaction was consummated.

15.    To create the "clean shell" in AEIC, among other things, PGIC and AEIC entered into a transfer and assumption agreement (the "2005 T&A Agreement") on June 15, 2005.  The 2005 T&A Agreement is attached as Exhibit 2.  PGIC is a signatory to the 2005 T&A Agreement.  PGIC is a party to the 2005 T&A Agreement.

16.    In the 2005 T&A Agreement, PGIC agreed to assume "all of [AEIC's] liabilities or contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise or whether due now or in the future," either through direct assumption or as a reinsurer pursuant to Paragraph 6 of that contract.  PGIC received substantially all of the pre-transaction assets of AEIC.

17.    As a result, PGIC assumed as a matter of law all obligations with respect to the AEIC liabilities that were directly assumed by PGIC, including the obligation to conduct litigation.

18.    The 2005 T&A Agreement provides that "all liabilities of every nature and description of American [AEIC] at the time of the Transfer and Assumption shall attach to and be assumed by Pennsylvania General and may be enforced against Pennsylvania General to the same extent as if such liabilities had been originally incurred or contracted by Pennsylvania General."

19.    The 2005 T&A Agreement provides that "the terms and conditions contained in this Instrument shall inure to the benefit of, and be binding upon, the Parties and their respective successors and permitted assigns."

20.    The 2007 SPA attaches as "Exhibit A" the 2005 T&A Agreement.  The 2007 SPA defines the 2005 T&A Agreement as the "Reinsurance Agreement."

21.    The 2005 T&A Agreement was incorporated into the 2007 SPA repeatedly.  For example:

(a)    In Section 2.8 of the 2007 SPA, PGIC agreed, among other things, that the Reinsurance Agreement [the 2005 T&A Agreement] constitutes a legal, valid and binding obligation of each of PGIC and AEIC, enforceable against each of PGIC and AEIC, respectively, in accordance with its terms.

(b)    In Section 2.19 of the 2007 SPA, PGIC agreed, among other things, that all liabilities of AEIC that have arisen or could arise, under any insurance contract or any reinsurance treaty or otherwise, have been and will be assumed by PGIC pursuant to the Reinsurance Agreement [the 2005 T&A Agreement].

(c)  In Section 6.12 of the 2007 SPA, PGIC agreed, among other things, that

the Reinsurance Agreement [the 2005 T&A Agreement] shall be in full

force and effect as a condition precedent to the obligation of SPARTA to

close on the [2007] SPA.

22.  In Section 8.1 of the 2007 SPA, PGIC agreed, among other things, to fully

indemnify SPARTA (as the successor to SIH) for any breaches of PGIC's obligations under the

2005 T&A Agreement, all liabilities of AEIC prior to the closing of the sale, and all of the costs

and expenses associated therewith, including, but not limited to, attorneys' fees and expenses.

That provision of the 2007 SPA states, in relevant part:

> Seller [PGIC] agrees to indemnify and hold Purchaser [SIH] harmless of and from
> any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability
> or damage, including, without limitation, reasonable attorneys' fees, accountants'
> fees and other investigatory fees and out-of-pocket expenses, actually expended or
> incurred by Purchaser [SIH] or the Company [AEIC] (collectively, "Losses"),
> arising out of or resulting from (i) any breach of representation or warranty
> (including any misrepresentation in, or omission from, any certificate or other
> document furnished or to be furnished by the Seller to Purchaser hereunder), or
> nonfulfillment of any covenant or agreement on the part of Seller under [the 2007
> SPA]; (ii) the failure by the Seller [PGIC] to perform any of its obligations under
> the [2005] Reinsurance Agreement; (iii) any Loss arising out of or resulting from
> the existence of Company [AEIC] prior to the Closing or the conduct of the
> Business or other operations by or of Company [AEIC] prior to the Closing; . . .
> and (vi) all actions, suits, proceedings, demands, assessments, judgments, costs and
> expenses incident to any of the foregoing (any and all of which are hereafter
> referred to as a "Claim").

23.  Section 8.1 of the 2007 SPA further establishes procedures by which

SPARTA may seek and thereby be entitled to receive indemnification, stating in relevant part:

> Purchaser [SIH] shall give Seller [PGIC] written notice by certified or registered mail or
> overnight courier of any Claim with respect to which Purchaser [SIH] seeks
> indemnification.  Seller [PGIC] shall have ten business days from the date of receipt of
> such notice to notify Purchaser [SIH] that Seller [PGIC] will assume the entire control of
> the defense, compromise or settlement (any and all of which are hereinafter referred to as
> "Defense") of such Claim through its own attorneys, which attorneys must be reasonably
> acceptable to Purchaser [SIH], and at its own expense.  If Seller [PGIC] shall assume

6

such Defense, it shall promptly advise Purchaser [SIH] of its activities and efforts in connection therewith and of the ultimate resolution of such Claim . . . . If Seller [PGIC] fails to notify Purchaser [SIH] that it has assumed the Defense or does not in fact assume the Defense, Purchaser [SIH] may, but shall not be required to, pay, compromise or settle such Claim, or take such action to settle such Claim, provided that Purchaser [SIH] shall notify Seller [PGIC] of such action.  In such event, Purchaser [SIH] shall be fully entitled to indemnification hereunder.

24.    Section 8.3 of the 2007 SPA sets out additional procedures regarding the valuation of claims for indemnification, stating in relevant part:

After the indemnified party has determined the dollar amount of any Claim, such indemnified party shall provide written notice to indemnifying party of the amount of such Claim, which notice shall include in reasonable detail information explaining calculation of the amount of such Claim.  Unless, within thirty (30) business days after the receipt of such notice by the indemnifying party, the indemnified party receives written notice that indemnifying party does not concur with the indemnified party's determination of the amount of the Claim, the amount of such Claim provided in such written notice shall conclusively be deemed to have been accepted by the indemnifying party and to be the agreed amount which the indemnified party and, in the event that Purchaser [SIH] is the indemnified party, Company [AEIC] are entitled to receive by way of indemnification from the indemnifying party (the "Indemnification Loss").  If the indemnified party within such thirty (30) business day period receives written notice that the indemnifying party disagrees with the amount of the Claim, the parties shall endeavor forthwith, and within ten (10) business days after receipt of such notice of disagreement by the indemnified party, to negotiate in good faith to resolve the issue or issues which form the basis of their disagreement.  If no resolution with respect to such disagreement has been reached by the parties within such ten (10) business day period, either the indemnified party (on behalf of itself or, in the event Purchaser [SIH] is the indemnified party, the Company [AEIC]) or the indemnifying party may commence litigation with respect to such disagreement in a court of competent jurisdiction in the Commonwealth of Massachusetts.

25.    Section 8.4 of the 2007 SPA provides for payment of indemnification losses within five business days of the valuation of a claim for indemnification being determined, stating in relevant part:

Any indemnification amount payable by any indemnifying party pursuant to Section[] 8.1 or 8.2 hereunder shall be promptly remitted by such indemnifying party to a bank account of the indemnified party (or, if Purchaser [SIH] is the indemnified party and so directs the Seller [PGIC], the Company [AEIC]), as designated in writing by the indemnified party, within five business days after the determination of the amount of such indemnification amount.

7

26.     The transaction Closing occurred on August 7, 2007.

27.     Following the transaction, AEIC was renamed SPARTA Insurance Company in August 2007, and later merged with SIH in October 2015.

**SPARTA SEEKS INDEMNIFICATION FROM PGIC FOR THE ADNO CLAIMS**

28.     For more than a decade after SIH acquired AEIC, claims made pursuant to historical AEIC policies were not administered or paid by SPARTA.  Instead, SPARTA and its affiliates tendered claims made in respect of historical AEIC policies for administration and payment pursuant to the 2007 SPA and/or 2005 T&A Agreement.  As of May 2021, AEIC claims were being administered by a third-party administrator, Armour Risk Management, Inc., later known as A.G. Risk Management, Inc. ("AGRM").

29.     AEIC issued at least eleven insurance policies to ADNO between 1964 and 1973.  All of those insurance policies issued to ADNO were issued before the Effective Date of the 2005 T&A Agreement and 2007 SPA.

30.     The ADNO Claims are currenting pending in an action in the U.S. Bankruptcy Court in the Eastern District of Louisiana.

31.     In 2021, SPARTA learned that claims made in respect of historical AEIC policies were no longer being administered or paid.  Starting in May 2021, SPARTA sent PGIC multiple notices pursuant to Section 8.1 of the 2007 SPA seeking to tender to PGIC all AEIC claims being administered by AGRM, including the ADNO Claims.

32.     SPARTA repeatedly requested that PGIC confirm its acceptance of financial and management responsibility for the AEIC claims being managed by AGRM.  SPARTA further advised PGIC that, in the absence of such confirmation, SPARTA would continue to protect its interests and would look to PGIC for reimbursement of all expenses

incurred, including attorneys' fees, expenses and costs, in connection with the handling and payment of the AEIC claims.

33.    PGIC refused to comply with its contractual obligations to handle or pay the historical AEIC claims, including the ADNO Claims.  As such, SPARTA had no choice but to handle the AEIC claims to protect its interests and the interests of AEIC policyholders.

34.    Since assuming defense of claims arising under AEIC policies, SPARTA periodically informed PGIC of the status of all AEIC claims for which SPARTA is seeking indemnification pursuant to Section 8.1 of the 2007 SPA, including the ADNO Claims.

35.    On March 27, 2025, SPARTA sent PGIC a letter providing further notice of PGIC's indemnification obligations pursuant to Section 8.1 of the 2007 SPA related to the ADNO Claims (the "March 27, 2025 Section 8.1 Notice").

36.    The March 27, 2025 Section 8.1 Notice also informed PGIC that mediation related to ADNO's bankruptcy plan was scheduled for early April 2025.

37.    PGIC did not notify SPARTA that it would assume control of the defense, compromise or settlement of the ADNO Claims.

38.    On April 4, 2025, PGIC's counsel requested an extension of time to respond to the March 27, 2025 Section 8.1 Notice.  SPARTA granted PGIC's request and extended PGIC's deadline to May 2, 2025, subject to PGIC's agreement that "SPARTA will take all required actions in respect of the AEIC claims described in the notices, without waiving SPARTA's right to seek repayment from PGIC pursuant to Section 8.3 of the SPA, while PGIC is continuing to consider whether to assume the defense of those AEIC claims, and will do so until such time as PGIC notifies SPARTA in writing that PGIC will assume the defense of that particular claim."

39.     On May 2, 2025, PGIC's counsel again requested an additional extension of time to respond to the March 27, 2025 Section 8.1 Notice.  SPARTA agreed to further extend PGIC's deadline to respond to July 2, 2025, subject to the same agreement as the initial extension.

40.     On July 7, 2025, SPARTA and PGIC again agreed to extend the deadline for PGIC to respond to the March 27, 2025 Section 8.1 Notice to August 29, 2025, subject to the same agreement as the prior extensions.

41.     PGIC did not substantively respond to the March 27, 2025 Section 8.1 Notice prior to October 17, 2025, more than 45 days after PGIC's thrice-extended August 29, 2025 deadline.

## FACED WITH PGIC'S REFUSAL TO SATISFY ITS CONTRACTUAL OBLIGATIONS, IN 2021, SPARTA FILED A DECLARATORY JUDGMENT ACTION IN THIS COURT

42.     On July 26, 2021, SPARTA filed a Complaint in this Court seeking declaratory relief against PGIC.  *SPARTA Insurance Company v. Pennsylvania General Insurance Company*, No. 1:21-cv-11205-FDS (D. Mass.) (the "2021 Action").  The Complaint subsequently was amended to add breach of contract claims.

43.     In the 2021 Action, SPARTA sought declaratory judgments that (a) PGIC is required to indemnify and hold SPARTA harmless for the AEIC claims, as PGIC agreed to do under the 2007 SPA, and (b) PGIC is responsible for all AEIC's claims, as PGIC agreed under the 2005 T&A Agreement.

44.     The 2021 Action was litigated extensively for more than four years.  After substantial discovery, the parties filed cross motions for summary judgment.

45.     While the summary judgment process was pending, SPARTA granted PGIC numerous extensions of time to respond to notices provided to PGIC pursuant to the 2007

SPA. SPARTA agreed to do so expecting that after this Court issued its summary judgment ruling, PGIC would follow the Court's decision. PGIC has not done so.

**IN SEPTEMBER 2025, THIS COURT
RULED IN FAVOR OF SPARTA AND HELD THAT THE
2005 T&A AGREEMENT AND 2007 SPA ARE ENFORCEABLE AGAINST PGIC**

46. On September 30, 2025, this Court granted summary judgment to SPARTA on both of SPARTA's declaratory judgment claims. The Court denied PGIC's cross-motion for summary judgment.

47. In its September 30, 2025 decision, the Court held that PGIC is contractually obligated to administer and pay the AEIC claims and to indemnify SPARTA for any losses related to the AEIC claims. The Court also held that PGIC's obligations to indemnify SPARTA have not been novated, modified, waived, or otherwise extinguished.

48. Specifically, the Court ruled that "PGIC's obligations under the 2005 [Reinsurance Agreement] and 2007 SPA have not been novated, waived, modified, or barred by laches or the implied covenant of good faith and fair dealing, and the contracts remain enforceable against PGIC." *SPARTA Insurance Company*, No.1:21-cv-11205-FDS, Dkt. No. 223, at 22 (D. Mass. Sept. 30, 2025) (Saylor, J.).

49. On December 19, 2025, the Court granted SPARTA's Motion For Entry Of Separate And Final Judgment On Counts I And II Pursuant To Rule 54(b). *SPARTA Insurance Company*, No.1:21-cv-11205-FDS, Dkt. No. 255, at 1-2 (D. Mass. Dec. 19, 2025) (Saylor, J.).

50. On January 6, 2026, the Court entered separate and final judgment on SPARTA's Counts I and II. *SPARTA Insurance Company*, No.1:21-cv-11205-FDS, Dkt. No. 258, at 1 (D. Mass. Jan. 6, 2026) (Saylor, J.).

11

51.    Specifically, in its judgment the Court declared:

(1) that the 2005 Transfer and Assumption Agreement between Pennsylvania General Insurance Company and American Employers' Insurance Company, and the 2007 Stock Purchase Agreement between SPARTA Insurance Holdings, Inc., Pennsylvania General Insurance Company, and One Beacon Insurance Company, remain in effect and continue to bind the parties to this action, directly or as successors in interest, according to their terms, and (2) the agreements have not been novated, waived, amended, or otherwise modified since February 8, 2008.

*Id.*

52.    SPARTA's breach of contract claims in the 2021 Action, which seek a determination of the amount of money PGIC must pay SPARTA for damages incurred through November 30, 2024, remain pending and are expected to proceed to trial in 2026.

**FOLLOWING THE COURT'S DECISION IN THE
2021 ACTION, PGIC REFUSED TO INDEMNIFY SPARTA
FOR PAYMENTS SPARTA MADE IN RESPECT OF THE ADNO CLAIMS**

53.    Despite the Court's ruling, PGIC continues to refuse to assume handling any AEIC claims (with the exception of a handful of claims), including the ADNO Claims, or to reimburse SPARTA for the millions of dollars that SPARTA paid in respect of historical AEIC claims that are PGIC's responsibility.

54.    On October 17, 2025, SPARTA sent a further notice to PGIC pursuant to Section 8.1 of the 2007 SPA, notifying PGIC of SPARTA's intention to seek indemnification from PGIC for any losses related to the ADNO Claims ("October 17, 2025 Section 8.1 Notice").

55.    In the October 17, 2025 Section 8.1 Notice, SPARTA advised that "[u]nder Section 8.1 of the SPA, if PGIC does not notify SPARTA that it will assume the control and defense of noticed claims within ten business days from receipt of the notice, SPARTA may take action to pay, compromise or settle the claims to protect its interests as necessary with respect to the claims and will look to PGIC for reimbursement for all costs incurred in that necessary action."

56.    In the October 17, 2025 Section 8.1 Notice, SPARTA advised that "[t]o date, PGIC has not notified SPARTA in writing that PGIC will assume defense of the ADNO Claims or otherwise provided a substantive response to my March 27, 2025 letter.  Accordingly, pursuant to Section 8.1 SPARTA may, but is not required to, compromise or settle the ADNO Claims."

57.    In the October 17, 2025 Section 8.1 Notice, SPARTA advised that it is "writing to remind PGIC that SPARTA has reached a settlement in principle with the ADNO and a settlement fund of $21 million will need to be funded to resolve the ADNO Claims later this month.  The Court's recent ruling made clear that PGIC is the party economically responsible for this settlement.  However, if PGIC does not confirm that it will fund the settlement by October 31, 2025, SPARTA will have no choice but to fund the settlement fund itself and then seek indemnification from PGIC for that amount."

58.    In the October 17, 2025 Section 8.1 Notice, SPARTA advised that "[b]ecause the above-identified matter remains ongoing and SPARTA may incur ongoing expense with respect to the matter (which ultimately is the responsibility of PGIC), the dollar amount of the foregoing matter for indemnification cannot be determined at this time.  Pursuant to Section 8.3 of the 2007 SPA, SPARTA will provide written notice to PGIC of the dollar amount of the foregoing matter after SPARTA has determined such dollar amount(s)."

59.    On October 31, 2025, PGIC's counsel responded to the October 17, 2025 Section 8.1 Notice (the "October 31, 2025 Letter").

60.    In the October 31, 2025 Letter, PGIC refused to accept tender of the ADNO Claims and disclaimed any responsibility for the ADNO Claims.

61.     On December 3, 2025, SPARTA notified PGIC pursuant to Section 8.3 of the 2007 SPA that SPARTA had expended more than $23 million on the ADNO Claims through October 31, 2025 (the "December 3, 2025 Section 8.3 Notice").  SPARTA requested that PGIC promptly remit payment to SPARTA in that amount.  SPARTA also reserved the right to recover additional amounts incurred by SPARTA after October 31, 2025, and stated that SPARTA would provide PGIC with notice of such additional amounts.

62.     PGIC received the December 3, 2025 Section 8.3 Notice and its enclosures on December 4, 2025.

63.     On December 30, 2025, PGIC's outside litigation counsel responded on behalf of PGIC to the December 3, 2025 Section 8.3 Notice.  In the December 30, 2025 letter, PGIC continued to dispute PGIC's liability for the AEIC claims—despite the Court's summary judgment ruling rejecting PGIC's defenses, finding that the 2007 SPA and 2005 T&A Agreement remain enforceable against PGIC, and that PGIC's obligations have not been extinguished.

64.     SPARTA attempted to negotiate in good faith with PGIC regarding the issues PGIC raised in PGIC's December 30, 2025 letter, but PGIC refuses to assume the defense of the ADNO Claims or make any payments in respect of the historical AEIC claims.

65.     To date, PGIC has not made any payments to SPARTA for the amounts sought in the December 3, 2025 Section 8.3 Notice.  PGIC also has not agreed to satisfy PGIC's contractual obligation under the 2007 SPA and 2005 T&A Agreement to, among other things, administer and pay the ADNO Claims.

14

66.    To date, PGIC has paid SPARTA zero dollars.  PGIC has not made a single payment to SPARTA for any of the claims made in respect of the historical AEIC policies, including the ADNO Claims that are the subject of this action.

## COUNT I
### (Breach of Contract–2007 SPA)

67.    SPARTA repeats and realleges the preceding paragraphs as if fully set forth herein.

68.    The 2007 SPA is a valid and binding contract.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2007 SPA in the 2021 Action.

69.    Pursuant to the 2007 SPA, PGIC agreed to indemnify and hold SPARTA harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees, and out-of-pocket expenses, actually expended or incurred by SPARTA or AEIC, arising out of or resulting from, among other things, (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by PGIC to SPARTA) or nonfulfillment of any covenant or agreement on the part of PGIC under the 2007 SPA; (ii) the failure by PGIC to perform any of its obligations under the 2005 T&A Agreement; (iii) any Loss arising out of or resulting from the existence of AEIC prior to August 7, 2007 or the conduct of the Business, as defined in the 2007 SPA, or other operations by or of AEIC prior to August 7, 2007; and (iv) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing.  This is consistent with the Court's summary judgment ruling in favor of

15

SPARTA, and subsequent entry of separate and final judgment, with respect to the 2007 SPA in the 2021 Action.

70.    SPARTA satisfied all of its contractual obligations under the 2007 SPA at all relevant times.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2007 SPA in the 2021 Action.

71.    SPARTA provided all of the notices required under the 2007 SPA in a timely manner.

72.    The ADNO Claims are claims made against AEIC policies issued before the Effective Date of the 2005 T&A Agreement.

73.    SPARTA incurred expenses arising out of or resulting from the ADNO Claims, including, but not limited to, $23,123,656.68 in settlement payments, attorneys' fees, costs, expenses and third-party administrator costs that SPARTA has incurred through October 31, 2025 (the "Indemnification Losses").

74.    The Indemnification Losses arise from or are a result of the existence of AEIC prior to August 7, 2007, or the conduct of the Business, as defined in the 2007 SPA, or other operations by or of AEIC prior to August 7, 2007.

75.    The Indemnification Losses arise from or are a result of PGIC's failure to perform its obligations under the 2005 T&A Agreement.

76.    The Indemnification Losses arise from or are a result of PGIC's breach of its representations and warranties and/or nonfulfillment of its covenants or agreements under the 2007 SPA, including, without limitation, Sections 2.8, 2.19, 6.12 and 12.16 of the 2007 SPA.

16

77.    PGIC breached its contractual obligations to SPARTA by refusing to indemnify SPARTA for the Indemnification Losses and for SPARTA's costs, expenses and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the 2007 SPA and in connection with this action.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2007 SPA in the 2021 Action.

78.    PGIC's obligations in the 2007 SPA have not been novated, modified, waived, or otherwise extinguished.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2007 SPA in the 2021 Action.

79.    The 2007 SPA is enforceable against PGIC.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2007 SPA in the 2021 Action.

80.    SPARTA suffered and continues to suffer damages as a result of PGIC's breach of the 2007 SPA and is entitled to damages in an amount to be determined at the trial of this action.

## COUNT II
### (Breach of Contract–2005 T&A Agreement)

81.    SPARTA repeats and realleges the preceding paragraphs as if fully set forth herein.

82.    The 2005 T&A Agreement is a valid and binding contract.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

17

83.     Pursuant to the 2005 T&A Agreement, PGIC assumed substantially all of AEIC's assets, excluding $11 million in policyholders' surplus and AEIC's corporate records, insurance licenses and regulatory records.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

84.     In return, PGIC agreed to assume substantially all of AEIC's liabilities, whether existing at the time of the transfer or arising in the future, including, without limitation, liabilities related to payments and administrative responsibilities under policies issued by AEIC on or prior to the Effective Date of the 2005 T&A Agreement and liabilities related to subsequent actions or proceedings arising from any of the liabilities or the assets of AEIC, whether existing at the time of the transfer or arising in the future.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

85.     PGIC also agreed that "all liabilities of every nature and description of American [AEIC] at the time of the 2005 T&A Agreement shall attach to and be assumed by Pennsylvania General and may be enforced against Pennsylvania General to the same extent as if such liabilities had been originally incurred or contracted by Pennsylvania General."  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

86.     The ADNO Claims are claims made against AEIC policies issued before the Effective Date of the 2005 T&A Agreement.

87.     PGIC has refused to accept tender of, make payments for and/or handle administrative responsibilities for the ADNO Claims, and has instead taken the position that

SPARTA should bear these costs.  PGIC has also refused to reimburse SPARTA for its expenses related to said claims.

88.     PGIC's refusal to assume the liabilities for the ADNO Claims or to reimburse SPARTA for its expenses is a breach of the 2005 T&A Agreement, including, without limitation, the provisions obligating PGIC to assume "any unpaid losses, loss adjustment expenses and any and all liabilities existing or arising in the future" under the business transferred to PGIC, and "any and all subsequent actions, proceedings or liabilities arising from the foregoing assets or liabilities of [AEIC]."

89.     SPARTA satisfied all of its contractual obligations under the 2005 T&A Agreement at all relevant times.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

90.     PGIC's obligations in the 2005 T&A Agreement have not been novated, modified, waived, or otherwise extinguished.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

91.     The 2005 T&A Agreement is enforceable against PGIC.  This is consistent with the Court's summary judgment ruling in favor of SPARTA, and subsequent entry of separate and final judgment, with respect to the 2005 T&A Agreement in the 2021 Action.

92.     SPARTA suffered and continues to suffer damages as a result of PGIC's breach of the 2005 T&A Agreement, including, but not limited to, more than $23,123,656.68 in settlement payments, attorneys' fees, costs, expenses, and third-party administrator costs that

19

SPARTA has incurred and paid through October 31, 2025, and is entitled to damages in an amount to be determined at the trial of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SPARTA respectfully requests that this Court:

    (a)    Grant judgment to SPARTA on its claims;

    (b)    Award SPARTA such damages as it has sustained as a result of PGIC's breaches of contract, including, at a minimum $23,123,656.68;

    (c)    Award SPARTA pre- and post-judgment interest;

    (d)    Award SPARTA its attorneys' fees, expenses and costs in bringing this action; and

    (e)    Grant SPARTA such other and further relief as this Court may deem just and proper.

Dated:  January 15, 2026
        Boston, Massachusetts

Respectfully submitted,

*/s/ Christopher G. Clark*
James R. Carroll (BBO #554426)
Christopher G. Clark (BBO #663455)
Catherine A. Fisher (BBO #686163)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
catherine.fisher@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*